Black, J.
This is an action of contract commenced by the plaintiffs, police officers of the Town of Mansfield, in which they seek to recover for overtime wages not paid to them while they were attending the State Police Academy at Framingham. The defendant’s answer raised several issues, but the determinative issue was the plaintiffs’ failure to avail themselves of the remedy set forth in the grievance procedure provisions of the collective bargaining agreement between the Town and the Mansfield Branch of the Massachusetts Police Association, as in effect on the various dates involved.
The case was heard upon the following stipulation of facts:
1. The plaintiffs are three individuals who as police officers of the Town of Mansfield, were ordered to and did attend the Massachusetts State Police Academy for twelve weeks beginning November 10, 1975. During the twelve weeks that the plaintiffs were in attendance at the academy, they were required for nine of those weeks to be continuously at the academy from 7 A.M. Monday to 5 P.M. Friday for a total of 106 hours per week and three *89 weeks they were at the academy continuously from 7:00 A.M. on Monday to 5:00 P.M. on Wednesday for a total of 58 hours. They were required to be in attendance and were confined to the academy during those twelve weeks for a total of 1,128 hours each.
2. For their weekly attendance at the State Police Academy, the plaintiffs were paid by the Town of Mansfield at the rate of 40 hours per week (480 hours for twelve weeks). Said hours were paid at the regular straight time (not over-time), hourly rate for each plaintiff. The plaintiffs were not compensated for the additional 648 hours that they were required to attend and be confined to the State Police Academy. The respective rates of pay for each of the officers were as follows: (1) John Simpson, $4.9430 per hour; (2) John McCarthy, $4.6410 per hour, and (3) Alan Keith, $4.6410 per hour.
3. On November 10,1975, the Town of Mansfield had a written collectively bargained contract with the Mansfield Branch of the Massachusetts Police Association which set forth the rights and obligations of the Town of Mansfield with respect to hours, wages and conditions of employment of regular full-time officers such as the plaintiffs. Said contract provided in part “Article IV. Overtime”:
(A) All overtime will be paid at a time' and orie-half rate for all hours or, portion thereof in excess of eight (8) hours per day or forty (40) hours per week.
(C) When an employee is ordered by the chief of Police with the approval of the Town Manager to attend school, such time.shall be included in his regular work week for the purpose of overtime.
4. Massachusetts General Laws, Chapter 41, Section 97A provides that municipalities must send every person who receives an appointment as a regular police officer on a permanent full-time basis to a training course lasting at least six (6) weeks. Said statute further provides:
“Any person so attending such a school shall be paid the wages provided for the position to which he was appointed and such reasonable expenses as may be determined by the appointing authority.”
5. For manyyears prior to November 10,1975, police officers ofthe Town of Mansfield attended police academies on a commuting basis and had normal working hours of 8:00 A.M. to 5:00 P.M. daily. During such attendance at school, any hours worked as a police officer for the Town, were paid at an overtime rate. That is, if the officer, after attending school or on the weekends worked as a police officer, he was paid for such work as a police officer at the rate of time and one half.
6. During the time that the plaintiffs were attending the Massachusetts State Police Academy, they were required to be in attendance and under instruction and superintendence at the academy continuously each day. During .the day, all of their activities were monitored and directed by the instructors at the police academy. This was a military type organization during which every minute of the time was accounted for and in addition, periodic procedures were held even at night when the men were supposed to be sleeping. The normal work day from 5:45 o’clock in the morning until 10:00 o’clock at night. During those times, the plaintiffs were required to perform various military functions as well as attend classes and engage in physical training and cleaning up their equipment. There was little or no so-called “free-time”. There was extensive physical conditioning and a large amount of mental stress. The plaintiffs were under constant 24 hour supervision. On several occasions, each of the plaintiffs was awakened from his bed in the *90 middle of the night by the faculty of the State Police Academy and required to engage in “military games” which consisted of physical and mental activity.
7. The plaintiffs were not compensated for the additional 648 hours that they were required to attend, be confined to and be supervised by the State Police Academy faculty. They were only paid for the 40 hours each week during the 12 weefc that they were at the academy and that pay was at straight time.
8. Shortly before leaving for the academy, each one of the plaintiffs executed a document prepared by the police department of the Town of Mansfield. A copy of that document is attached to this stipulation. The document was typed out and handed to each one of the plaintiffs individually. They were advised that they had to sign the document or they would not be allowed to go to the Police Academy. They were further advised that if they did not go to the Police Academy their employment with the Town of Mansfield would be terminated. They were not told that they could go to another academy at which academy they would not be required to stay beyond the normal working hours of 8:00 A.M. to 5:00 P.M. Each one of the plaintiffs believed that he had to sign this document to retain his position with the Town of Mansfield as a police officer.
9. That the collectively bargained contract between the Town of Mansfield and the Mansfield Police Association contained the following grievance procedure:
ARTICLE XV — Grievance procedure.
A grievance which is a dispute which might arise between the parties concerning the application, meaning or interpretation of the Agreement, shall be resolved in the following manner.
STEP 1. The aggrieved Officer shall present the matter informally to the Chief of Police or his designee for adjustment.
STEP 2. If no satisfactory resolution is made in Step 1, the aggrieved Officer shall reduce the grievance in writing and file a copy of same with the Chief of Police and the Town Manager.
STEP 3. The Town Manager shall, upon receipt of the written grievance, consider same and notify the Officer and the Association of the results of his consideration.
STEP 4. If the Town Manager fails to act upon said grievance within forty-five (45) days of presentation or after his disposition thereof, the Association or the Employer may, within forty-five (45) days thereafter, request arbitration of the grievance pursuant to the Rules of the American Arbitration Association, provided, however, no grievance shall be submitted to arbitration which:
1. Involves a matter of policy, management rights reserved' to the employer, or the Rules and Regulations of the Police Department.
2. Involves a matter that is outside the scope of the express terms of this Agreement.
3. Involves a matter which the employer could not effectuate, regardless of the decision of the Arbitrator.
4. Involves a matter which was a proposal in negotiations but not included in the express terms of this Agreement.
5. Involves a matter which has not been presented timely according to the time limitation set forth herein.
Nothing in this Agreement shall be construed as to obligate the parties to arbitrate the terms of any Agreement or reopen thereof *91 upon termination of this Agreement.
The cost of the Arbitrator shall be borne equally by the parties;
10. That in the spring of 1980 the plaintiffs complied with Step 1 of the grievance procedure (informal presentation) by presenting their claim for' overtime to the acting Chief of Police. The acting Chief of Police took no action on the grievance.
11. On September 11, 1980, the plaintiffs complied with Step 2 of the grievance procedure by filing their grievance in writing with the Chief of Police and the Town Manager.
12. On October 28,1980, the Town Manager (by letter) advised the plaintiffs that their grievance had been denied. In that same letter, the Town Manager advised the plaintiffs that their “dispute is neither grievable or arbitrable”.
13. This stipulation contains all the facts necessary for the Court to adjudicate this matter.
The trial judge, relying upon Frost v. Town of Framingham, 9 Mass. App. Ct. 843 (1980), found for the defendant on the grounds that the plaintiffs had failed to exhaust their rights under the grievance procedures of the collective bargaining contract. We find no error in this ruling.
It is clear from the record that in the spring of 1980, the plaintiffs complied with Step 1 of the grievance prodedure (informal presentation) by presenting their claim for overtime to the acting Chief of Police. The acting Chief took no action on the grievance, so the plaintiffs followed the Step 2 grievance procedure on September 11,1980, by filing their grievance in writing with the Chief of Police and the Town Manager. By letter dated October 28,1980, the Town Manager denied the grievance. He also asserted that the dispute was neither grievable nor arbitrable. The plaintiffs did not request arbitration of the grievance.' Even before filing the Step 1 grievance, the plaintiffs had filed suit in the District Court to recover the overtime wages sought. This was done with obvious disregard to the grievance procedures set forth in the collective bargaining agreement and we find this to be a fatal error by the plaintiffs.
In Balsavich v. Local Union 170 of the International Brotherhood of Teamsters, 371 Mass. 283 (1976), the Supreme Judicial Court states:
Employees may not simply disregard the grievance procedures set out in a collective labor contract and go direct to court for redress against the employer. Norton v. Massachusetts Bay Transportation Authority, 369 Mass. 1, 2 (1975); Republic Steel Corp. v. Maddox, 379 U.S. 650 (1965). They must initiate the grievance procedure as the contract provides and it is only when the union failed in its duty to represent them fairly in pressing the grievance, or the employer repudiates or otherwise nullifies the grievance procedure, or the union and the employer can thrive together to subvert it, that the employees are free to try judicial remedies.
It is a well established principle that where an employee’s claim against the employer is based upon a breach of the collective bargaining agreement, the employee is thereby bound by the terms of that agreement which govern the enforcement of the contractive rights of the parties (Vacca v. Sipes, 386 U.S. 171, 183 (1967)). Frost v. Town of Framingham, supra, also provides a compelling precedent, and more recently the Appeals Court in Azzi v. Western Electric Company, 19 Mass. App. Ct. 406, at 410 (1985), noted that “[I]f the grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement.”
Neither the trial judge nor this court would regard the assertion by the *92 Town Manager that the subject matter of the grievance was not grievable nor arbitrable to be tantamount to a repudiation by the employer of the grievance and arbitration procedures of the contract. It appears that this statement merely reflected the Town Manager’s view that G.L.C. 41, § 96B was dispositive of the subject matter of the grievance. More importantly, the plaintiffs had filed suit in the District Court long before receipt of the Town Manager’s letter.
Finding no error of law, the judgment of the trial judge is affirmed.